UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

Bill Word, David Daquin,

      Plaintiffs,

   v.

U.S. Department of Energy

      Defendant.

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs Bill Word and David Daquin bring this action for declaratory and injunctive relief against the U.S. Department of Energy ("DOE"). DOE has gone beyond its statutory authority in increasing the stringency of water efficiency rules of certain consumer appliances without lawful authority. More precisely, DOE lacks the authority to increase the stringency of such rules for appliances other than showerheads, faucets, water closets, and urinals. This lawsuit seeks to confine the actions of the DOE to the exercise of its lawful statutory authority.

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this suit arises under the laws of the United States, and 28 U.S.C § 1346(a)(2), because this suit constitutes a civil action against an executive department of the United States.

2. This Court has the authority to grant declaratory and injunctive relief under

   Section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702; the

   Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202; and the inherent equitable

   power of this Court.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e)(1) because

   the defendant is an executive agency of the United States and Plaintiff Bill Word

   resides within this judicial district. Venue is proper in the Amarillo Division of

   the Northern District of Texas pursuant to 28 U.S.C. § 124(a)(5).

## PARTIES

4. Plaintiff Bill Word is an individual who resides in Texas within the boundaries of

   the United States District Court for the Northern District of Texas in Donley

   County, Texas.

5. Plaintiff David Daquin is an individual who resides in New Orleans, Louisiana.

6. Defendant U.S. Department of Energy is an agency of the United States.

## FACTS

7. In 1973, the Arab members of the Organization of Petroleum Exporting Countries

   (OPEC) countries imposed an oil embargo against the United States.

8. To mitigate the nation's dependence on OPEC oil, Congress included limits on the

   energy use of residential appliances for the first time in the Energy Policy and

   Conservation Act of 1975 (EPCA).

9. However, Congress did not consider or authorize restrictions on residential appliance water use at that time. The legislative history provided herein explains how Congress provided limited authority to DOE.

10. In the Energy Policy Act of 1992, Congress amended EPCA by enacting water efficiency standards for certain plumbing products and appliances and by expanding EPCA's purpose to include the conservation of "water by improving the water efficiency of certain plumbing products and appliances." 42 U.S.C. § 6201(8); Section 123 of the Energy Policy Act of 1992.

11. The Energy Policy Act of 1992 expanded the definition of "consumer product"— originally, a product that "is designed to consume energy"—by inserting after the phrase "or, with respect to showerheads, faucets, water closets, and urinals, water." 42 U.S.C. § 6291(1)(A); Section 123(b)(2)(A) of the Energy Policy Act of 1992.

12. The Energy Policy Act of 1992 expanded the definition of "energy conservation standard"—originally, "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use"—by adding the phrase "or, with respect to showerheads, faucets, water closets, and urinals, water use." 42 U.S.C. § 6291(6)(A); Section 123(b)(3)(A) of the Energy Policy Act of 1992.

13. The Energy Policy Act of 1992 applied water efficiency rules only to showerheads, faucets, water closets, and urinals.

14. In the Energy Independence and Security Act of 2007, Congress enacted explicit water and energy limits for clothes washers and dishwashers.

15. The Energy Independence and Security Act of 2007 set a "water factor of not more than 9.5" for residential clothes washers. 42 U.S.C.§ 6295(g)(9)(A)(ii); Section 311(a)(2) of the Energy Independence and Security Act of 2007.

16. In this context, the term "water factor" is used and defined as "the quotient of the total weighted per-cycle water consumption for cold wash divided by the cubic foot (or liter) capacity of the clothes washer." 10 C.F.R. § pt. 430, subpt. B, App. J2. In essence, "water factor" means the gallons of water used per cycle per cubic foot volume of the clothes washer. One implication of this is that the higher that a clothes washer's water factor is, the more water it is allowed to use in each cycle.

17. The Energy Independence and Security Act of 2007 instructed the U.S. Department of Energy to determine if it wanted to amend the standard "[n]ot later than December 31, 2011" for residential "clothes washers manufactured on or after January 1, 2015." 42 U.S.C. § 6295(g)(9)(B)(i).

18. As of December 31, 2011, the U.S. Department of Energy had not issued any standards for residential clothes washers.

19. The Energy Independence and Security Act of 2007 set a water limit of "6.5 gallons per cycle" for standard size residential dishwashers and "4.5 gallons per cycle" for compact size residential dishwashers. 42 U.S. Code § 6295(g)(9)(A); Section 311(a)(2) of the Energy Independence and Security Act of 2007.

20. The Energy Independence and Security Act of 2007 instructed the U.S. Department of Energy to determine if it wanted to amend the standard "[n]ot later than January 1, 2015. . . . for dishwashers manufactured on or after January 1, 2018." 42 U.S.C. § 6295(g)(10)(B)(i).

21. On May 30, 2012, the U.S. Department of Energy amended the water standards for residential dishwashers by setting the new water limits at 5 gallons per cycle for standard dishwashers and 3.5 gallons per cycle for compact dishwashers. Energy Conservation Program: Energy Conservation Standards for Residential Dishwashers, 77 FR 31918 (May 30, 2012).

22. On January 8, 2024, the Fifth Circuit Court of Appeals recognized that "No part of that text [of EPCA] indicates Congress gave DOE power to regulate water use for energy-using appliances (like dishwashers and washing machines)." *Louisiana v. United States Dep't of Energy*, 90 F.4th 461, 471 (5th Cir. 2024).

23. According to the Fifth Circuit, "EPCA does not appear to contemplate overlap between the products subject to 'energy' regulation and those subject to 'water' regulation." *Id.* at 470. This is because the statute authorized DOE to regulate "energy use, *or*, . . . water use," *id.* at 471, and "[t]he word "or' is almost always disjunctive."" *Id.* (quoting *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 80 (2018)).

24. It is for these reasons that the Fifth Circuit found it "obvious that the statute gave DOE power to regulate energy use for energy using appliances (like

dishwashers and washing machines) or water use for non-energy-using appliances (like showerheads, faucets, water closets, and urinals)." *Id.*

25. On February 29, 2024 Jeffrey Marootian, Principal Deputy Assistant Secretary for Energy Efficiency and Renewable Energy at the U.S. Department of Energy, issued a direct final rule requiring a minimum water efficiency ratio for clothes washers beyond that required by statute. Energy Conservation Program: Energy Conservation Standards for Residential Clothes Washers, 89 FR 19026 (March 15, 2024). This direct final rule was irreconcilable with the opinion of the Fifth Circuit Court of Appeals.

26. DOE recognized that "the definition of 'energy conservation standard,' in section 6291(6), expressly references water use only for four products specifically named: showerheads, faucets, water closets, and urinals." *Id.* at 19032.

27. However, the preamble to the DOE rule argued that the statutory language in 26 U.S.C. § 6291(6) is not an accurate reflection of the true statutory meaning of "energy convention standard" in the "context of the statute as a whole." 89 FR 19032.

28. According to DOE, when Congress added dishwashers and clothes washers to 42 U.S.C. § 6295, Congress "must have meant those products to be covered products and those standards to be energy conservation standards" and that Congress forgot to issue "conforming changes to the rest of the statute." 89 FR 19033.

29. DOE's claim about Congress's intentions is false. Congress considered giving

Defendants the authority to regulate the water efficiency of clothes washers and

dishwashers, but declined to do so.

30. At the House of Representatives hearing on May 1, 2007, numerous advocates

selected by the chairman argued for including this addition as a change to the

existing understanding of DOE. *Achieving—at long last—appliance efficiency*

*standards*, Before the H. Comm. on Energy and Commerce, Serial No. 110-36,

110th Cong. (2007).

31. At that hearing, California Energy Commissioner Arthur Rosenfeld advocated

that "should DOE be able to address separate features like we want clothes

washers to also have a water characteristic, because water is expensive in

California and we are short on it." *Id.* at 19. He stated:

> Many appliances have more than one efficiency attribute. Several, for
> example, use both energy and water (e.g., clothes washers, dishwashers), and
> DOE should be able to establish both energy efficiency and water efficiency
> requirements for them. . . . But DOE says it cannot take a thorough approach
> to energy efficiency. Instead, it has generally interpreted EPCA as
> prohibiting the adoption of more than one standard for an appliance. There is
> little justification for this in the statute, and none whatsoever in intelligent
> energy (and water) policy. If a standard is cost effective and technically
> feasible, DOE should adopt it. Thus Congress should make clear that DOE
> has, and should exercise, the authority to: establish both water and energy
> efficiency standards for the same appliance;

*Id.* at 27-28.

32. Commissioner Rosenfeld was asked to respond to a written question from Rep.

Markey: "Should Congress make it crystal clear in the statute that DOE has the

authority to adopt more than one appliance efficiency standard for an

appliance?" *Id.* at 246. Commission Rosenfeld responded, "Yes. As many appliances have more than one efficiency attribute, Congress should make it clear to DOE that it has the authority to: Establish both water and energy efficiency standards for the same appliance." *Id.*

33. In response to written questions from Congress concerning preemption of state water use standards DOE responded, on September 18, 2007, that "For most products, such as clothes washers and dishwashers, where DOE only regulates energy use, energy and water use are so closely linked that the Department effectively regulates water use by regulating energy use." *Id.* at 215.

34. On July 20, 2007, Congress sent written questions to the Association of Home Appliance Manufacturers (AHAM), which represents manufacturers of appliances such as dishwashers and clothes washers. It asked, "Should Congress make it crystal clear in the statute that DOE has the authority to adopt more than one appliance efficiency standard for an appliance?" *Id.* at 238. AHAM responded, "AHAM supports provisions in the Committee bill that allows for the setting of both minimum energy efficiency requirements and maximum water consuming requirements for clothes washers and dishwashers." *Id.* AHAM also stated that "[u]nder the Committee's bill, DOE is required to make determinations on appliance efficiency standards for all aspects covered by law, such as energy and water." *Id.* at 229.

35. On June 21, 2007, the Senate voted to amend 110 H.R. 6 (renamed to Energy Independence and Security Act of 2007) to include in section 221 (page 95) an

amendment to the definition of Energy Conservation Standard in 42 U.S.C.

6291(6) to include the water use of clothes washers and dishwashers within the

definition of an "energy conservation standard" that DOE has the authority to

amend as a new subpart (iii) to the definition. The Senate amendment read:

Section 321 of the Energy Policy and Conservation Act 6 (42 U.S.C. 6291)
is amended by striking paragraph (6) and inserting the following:

"(6) ENERGY CONSERVATION STANDARD.—

"(A) IN GENERAL.—The term 'energy conservation standard' means 1
or more performance standards that—

"(i) for covered products (excluding clothes washers, dishwashers,
showerheads, faucets, water closets, and urinals), prescribe a
minimum level of energy efficiency or a maximum quantity of energy
use, determined in accordance with test procedures prescribed under
section 323;

"(ii) for showerheads, faucets, water closets, and urinals, prescribe a
minimum level of water efficiency or a maximum quantity of water
use, determined in accordance with test procedures prescribed under
section 323; and

"(iii) for clothes washers and dishwashers—

"(I) prescribe a minimum level of energy efficiency or a maximum
quantity of energy use, determined in accordance with test
procedures prescribed under section 323; and

"(II) may include a minimum level of water efficiency or a
maximum quantity of water use, determined in accordance with
those test procedures.

"(B) INCLUSIONS.—The term 'energy conservation standard'
includes—

"(i) 1 or more design requirements, if the requirements were
established—

"(I) on or before the date of enactment of this subclause; or

9

> "(II) as part of a consensus agreement under section 325(hh); and
>
> "(ii) any other requirements that the Secretary may prescribe under section 325(r).
>
> "(C) EXCLUSION.—The term 'energy conservation standard' does not include a performance standard for a component of a finished covered product, unless regulation of the component is authorized or established pursuant to this 3 title."

36. Although there was clear support for that provision by the chairman of the House Committee on Energy and Commerce, and although that provision did pass the Senate, it did not pass the House. Instead, that portion of the Senate amendment was removed by the House through an amendment proposed by the House Rules Committee and adopted by the House on December 6, 2007. Future amendments by the Senate on December 13, 2007 did not re-add this section, and the statute was ultimately enacted without the proposed expansion of DOE authority.

37. Given the high level of interest in enacting the authority that DOE claims and the explicit rejection by the House of the interpretation that DOE claims, such actions by Congress cannot properly be considered a mistake.

38. On April 24, 2024, Defendant issued a direct final rule for dishwashers which contained almost identical arguments for its authority to regulate the water use of dishwashers. Rule Energy Conservation Program: Energy Conservation Standards for Dishwashers, 89 FR 31398, 31407 (Apr. 24, 2024).

39. Clothes washers and dishwashers have always been understood as covered products, because they were added as covered products in Section 332 of the Energy Policy and Conservation Act of 1975.

40. Congress defined what an energy conservation standard is, and that definition determines the scope of agency authority—which does not include the water use of clothes washers or other appliances outside of showerheads, faucets, water closets, and urinals.

41. Every type of product that Congress gave the U.S. Department of Energy the authority to regulate the water use thereof does not use any energy. In contrast, clothes washers and dishwashers use both energy and water.

42. The energy use of clothes washers and dishwashers are controlled by energy conservation standards, and they can properly be amended by the U.S. Department of Energy. However, the water use of such appliances cannot.

43. Plaintiffs are consumers of consumer appliances that are unlawfully regulated by the Defendant. They are harmed by these recent direct final rules, because their choice of a preferred clothes washer or dishwasher would be eliminated by these rules.

## CLAIMS FOR RELIEF

## COUNT I

## DECLARATORY AND INJUNCTIVE RELIEF AGAINST *ULTRA VIRES* AGENCY ACTION

44. Plaintiffs re-alleges and incorporates paragraphs 1 through 28 of this Complaint by reference as if set forth verbatim in this Claim.

11

45. Defendant does not have the authority to amend the standard for water efficiency of clothes washers, dishwashers, or other appliances other than showerheads, faucets, water closets, or urinals.

46. Defendant has without lawful authority amended the appliance regulations concerning water efficiency as to dishwashers and clothes washers.

## PRAYER FOR RELIEF

For these reasons, the Plaintiffs ask this Court to:

a) Issue declaratory relief that Defendant is currently without lawful authority to amend the water efficiency requirements of appliances other than showerheads, faucets, water closets, or urinals.

b) Issue injunctive relief enjoining Defendant to issue new regulations for water efficiency of dishwashers and clothes washers consistent with the standard set by Congress and the proper amendment process.

c) Issue injunctive relief enjoining Defendant from issuing further water efficiency rules for appliances other than showerheads, faucets, water closets, or urinals, absent any future statutory authority.

d) Award Plaintiffs costs and reasonable attorney's fees.

e) Award such other relief as the Court deems equitable and just.

Respectfully submitted,

Dated: June 13, 2024

/s/ Devin Watkins
Devin Watkins
Dan Greenberg
COMPETITIVE ENTERPRISE INSTITUTE
1310 L St. NW, 7th

Washington, D.C. 20005
(202) 331-1010
Dan.Greenberg@cei.org
Devin.Watkins@cei.org

*Counsel for the Plaintiffs*


MAYFIELD, HEINRICH, RAHLFS,
WEABER & PARSONS, LLP

By:      /s/ Joseph M. Parsons
Joseph M. Parsons
Texas Bar No. 24067815
320 S. Polk, Ste 400
Amarillo, TX 79101
(806) 242-0152
(806) 242-0159 (fax)
jparsons@mayfield-lawfirm.com

*Local Counsel for Plaintiffs*