IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| BILL WORD, *et al.*,<br><br>            Plaintiffs,<br><br>  v.<br><br>U.S. DEPARTMENT OF ENERGY,<br><br>            Defendant. | Case No. 2:24-cv-00130-Z |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**FOR LACK OF JURISDICTION**

## TABLE OF CONTENTS

I. TO THE EXTENT PLAINTIFFS ARE BRINGING A NON-STATUTORY *ULTRA VIRES* CLAIM, THAT CLAIM MUST BE DISMISSED .................................................................................. 1

    A. The *Thunder Basin* Doctrine Does Not Apply Here. .................................................. 2

    B. Plaintiffs' Statutory Arguments Fail to Persuade ....................................................... 5

    C. Exclusive Review in Circuit Court Bars *Ultra Vires* Claims In This Court. .......... 7

    D. Plaintiffs Have Not Met the Requirements To Bring a Non-Statutory *Ultra Vires* Claim. ........................................................................................................................... 8

II. PLAINTIFFS LACK STANDING. .............................................................................................. 9

CONCLUSION ................................................................................................................................. 10

Earlier this year, the Department of Energy published two direct final rules ("DFRs") under a specific rulemaking provision within the Energy Policy and Conservation Act of 1975 ("EPCA"). Those DFRs update statutory water-efficiency standards for residential dishwashers and clothes washers, as EPCA requires the Department to do. *See* 42 U.S.C. §§ 6295(g)(9)(B), 6295(g)(10)(B). Nevertheless, Plaintiffs allege that the Department lacks statutory authority to issue those DFRs.

The Department moved to dismiss Plaintiffs' complaint on two grounds: (1) that EPCA vests in circuit courts exclusive jurisdiction to hear challenges to EPCA final rules, *see* Mot. to Dismiss 5–10 (Aug. 19, 2024), ECF No. 14 ("Mot."); and (2) that Plaintiffs, who merely allege that they "are consumers of consumer appliances" whose "choice of a preferred clothes washer or dishwasher would be eliminated by these [DFRs]," Compl. ¶ 43, lack Article III standing (Mot. 10–12). Plaintiffs' opposition memorandum fails to rebut either argument. *See* Pls.' Mem. of Law in Opp'n to Def.'s Mot. to Dismiss, ECF No. 18 ("Opp'n").

I. **TO THE EXTENT PLAINTIFFS ARE BRINGING A NON-STATUTORY *ULTRA VIRES* CLAIM, THAT CLAIM MUST BE DISMISSED.**

Defendant reasonably understood Plaintiffs to challenge two DFRs under the Administrative Procedure Act, 5 U.S.C. §§ 701–06 ("APA"). Those DFRs are the only agency action addressed in the complaint—and the only alleged source of any Article III injury, *see* Compl. ¶ 43—and the complaint expressly invoked the APA. *See* Compl. ¶ 2 ("This Court has the authority to grant declaratory and injunctive relief *under Section 10(a) of the Administrative Procedure Act*, 5 U.S.C. § 702") (emphasis added); *see also* Civil Cover Sheet 1 (invoking APA § 702), ECF No. 1-2. These are not "straw men," Opp'n 2, but Plaintiffs' own words.

Nevertheless, Plaintiffs now declare that they are not relying on the APA—or indeed, on

1

any federal statute. Opp'n 2–4. Instead, they invoke "this Court's equitable jurisdiction." *Id.* at 2.[1] And they want the Court to exercise that jurisdiction, not only to set aside the two DFRs cited in their complaint, but also (1) to set aside those DFRs' predecessors, which were issued more than 10 years ago and never discussed in the Complaint (*see* Mot. 3); (2) to set aside other water-efficiency regulations (again, nowhere cited in Plaintiffs' complaint) of appliances other than those listed in 42 U.S.C. § 6291(1)(A); and (3) to enjoin any such regulations in the future. Put simply, that is not how judicial review of administrative actions works. It is not surprising, therefore, that Plaintiffs do not cite a single case—from any court, in any jurisdiction—in which a court wielded equitable power in the way that Plaintiffs suggest.

      **A.**     **The *Thunder Basin* Doctrine Does Not Apply Here.**

Plaintiffs lean heavily—almost exclusively—on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) and its progeny to support jurisdiction in this Court. That reliance is misplaced and has resulted in many pages of irrelevant argument.

In administrative law, the question often arises whether plaintiffs can challenge agency rules in the first instance in district court. But those questions arise in different contexts, governed by different lines of cases. Sometimes, for example, Congress erects a "special statutory review scheme" through which an agency is the initial adjudicator and the courts of appeals serve as a judicial backstop. *See Axon Enter. Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 185 (2023) (considering FTC adjudication scheme). The question in that circumstance is whether, given the availability of *post hoc* review of agency adjudication in circuit court, a plaintiff can bring a pre-

---

[1] Even still, Plaintiffs' memorandum is inconsistent (to say the least) on the ostensible source of jurisdiction: within the span of four pages, Plaintiffs claim (1) that "[t]his Court has jurisdiction due to 42 U.S.C. § 6306(b)(4)," Opp'n 1; (2) that "Plaintiffs invoke[] this Court's equitable jurisdiction," *id.* at 3, which "is not established by statute," *id.* at 4; and (3) that "[t]his Court has federal question jurisdiction [under] 28 U.S.C. § 1331," Opp'n 4.

2

enforcement challenge in district court—in effect, bypassing the agency's review. That question is governed by *Thunder Basin* and its progeny, including (most recently) *Axon Enterprise*.

In *Thunder Basin* itself, the Federal Mine Safety and Health Amendments Act of 1977 provided for appeals of civil penalties or other sanctions to an agency review commission and ultimately to the pertinent circuit court. *See* 510 U.S. at 204 (citing 30 U.S.C. §§ 815, 816, 823). Applying a multi-factor test, the Supreme Court found it "fairly discernible" from the Mine Act's statutory scheme—specifically, its provision of *post hoc* review of the commission's adjudication in the courts of appeals—that a mine operator could not bring a pre-enforcement challenge to agency regulations in district court. Rather, challengers had to first complete the special statutory review scheme at the commission. Thus, the genesis of the *Thunder Basin* doctrine.

But that is not the question presented here. EPCA imposes no "special statutory review scheme" within the meaning of *Thunder Basin*. Rather, it vests review of *the pre-enforcement challenge itself* in the courts of appeals. *Id.* § 6306(b)(1). The only question, therefore, is whether that vesting is exclusive. And *that* question is governed by a separate line of precedent, of which the seminal case is *Telecommunications Research & Action Center v. Federal Communication Commission*, 750 F.2d 70, 77 (D.C. Cir. 1984) ("*TRAC*") ("It is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' as it has here with regard to final FCC actions, a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." (cleaned up) (collecting cases from the Supreme Court, the Third Circuit, and the Seventh Circuit)). In sum, the question whether a plaintiff can bypass agency review to challenge the agency's rules collaterally in district court (*Thunder Basin*) is different than whether Congress' vesting of initial review in the courts of appeals is exclusive (*TRAC*).

3

The Fifth Circuit has followed *TRAC*'s lead, including in a case with remarkable parallels to this one. *See JTB Tools & Oilfield Servs. v. United States*, 831 F.3d 597 (5th Cir. 2016). The relevant statute in that case, the Occupational Safety and Health Act, provided:

> Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard.

*Id.* at 599 (citing 29 U.S.C. § 655(f)). That language is, in all relevant respects, identical to the language in EPCA. *See* 42 U.S.C. § 6306(b)(1). And yet, despite no mention of exclusivity in the statute, the Fifth Circuit easily concluded that "the plain text of the [OSH Act] grants exclusive jurisdiction to courts of appeals for standards issued by the Secretary." *JTB Tools*, 831 F.3d at 599; *see also id.* at 600 ("Pursuant to § 655(f), we have exclusive jurisdiction both over OSHA's issuance of health and safety standards and over OSHA's refusal to issue such rules."). That is the relevant teaching from *TRAC*: Congress does not have to say "exclusive" to mean exclusive.[2]

That deflates many of Plaintiffs' arguments. For example, they stress that EPCA's judicial-review provision says that aggrieved parties "may" petition in circuit court. Opp'n 10. But so did the OSH Act, and the Fifth Circuit in *JTB Tools* found its jurisdiction "plainly" to be "exclusive." 831 F.3d at 599. Congress uses the word "may" in these statutes because it confers upon aggrieved persons the *option* of petitioning for review—not because that petition process is one of several options for review. *Cf. JTB Tools*, 831 F.3d at 599; *see also, e.g.*, *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799–800 (8th Cir. 2006) (notwithstanding that "may" is generally permissive, not

---

[2] For that reason, Plaintiffs' distinction of *Ligon v. LaHood*, 614 F.3d 150 (5th Cir. 2010) and *Leal v. Szoeke*, 917 F.2d 206 (5th Cir. 1990) is beside the point. The statutes in those cases may have said "exclusive," but the teaching from *TRAC*—applied by the Fifth Circuit in *JTB Tools*—is that the word "exclusive" is not necessary to find exclusive jurisdiction in the courts of appeals.

mandatory, a statute providing that interested parties "may" lodge a complaint was defining the exclusive means of review).

Because *Thunder Basin* does not apply to this case, this Court need not engage with its multi-factor test. *See* Opp'n 13–17. If anything, those factors favor dismissal: (1) Plaintiffs are not deprived of meaningful review (*Axon*, 589 U.S. at 190) by having to follow EPCA's process, because that process provides for APA-style review and remedies; (2) Plaintiffs' challenge in this Court is the *opposite* of "collateral" (*id.* at 192–93) and is instead *identical* to what EPCA allows; and (3) the agency's "expertise" (*id.* at 194–95) is beside the point, since—unlike in a *Thunder Basin* situation—there is no agency adjudication on which it could bring its expertise to bear. Engaging with these factors only underscores why *Thunder Basin* does not apply in the first place.[3]

   **B.**  **Plaintiffs' Statutory Arguments Fail to Persuade.**

The Department has established, in its opening brief and above, that Congress may provide exclusive jurisdiction via exactly the sort of "may petition" language contained in EPCA. Plaintiffs advance three arguments why EPCA is different, none of which persuades.

**1.** Plaintiffs suggest that the Supreme Court resolved this question in *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). Opp'n 7–11. But that case is inapposite for several reasons, chief among them that the statute at issue "include[d] a specific procedure for [pre-enforcement] review of certain enumerated kinds of regulations, *not encompassing those of the kind involved [t]here*." *Abbott Lab'ys*, 387 U.S. at 141 (emphasis added) (footnote omitted). In other words, as in *Thunder Basin*, the Court was deciding whether an unenumerated type of claim was impliedly precluded

---

[3] While never addressing *TRAC* specifically, Plaintiffs suggest that the exclusive-review precedent cited by the Department has been "outmoded" by *Thunder Basin*. Opp'n 5. But because the two lines of cases address different situations, that argument fails. And it does not explain *JTB Tools*, which was decided by the Fifth Circuit (citing *TRAC*) two decades years after *Thunder Basin*.

from review. *See id.* ("[W]e must go further and inquire whether in the context of the entire legislative scheme the existence of that circumscribed remedy evinces a congressional purpose to bar agency action *not within its purview* from judicial review.") (emphasis added). That is not the case here, where the very claim brought in district court—a challenge to an EPCA final rule as exceeding statutory authority—is expressly channeled to circuit court. *See* 42 U.S.C. §§ 6306(b)(1)–(2). Indeed, Plaintiff Daquin asserts that the Fifth Circuit has jurisdiction to hear his challenge to one of the DFRs challenged here, and for the same reason that he raises here. *See* Petition for Review 1, *Daquin v. U.S. Dep't of Energy*, No. 24-60316 (5th Cir. June 20, 2024), ECF No. 1-2 ("Jurisdiction and venue are proper in this Court[.]"). Preclusion of judicial review altogether—the animating concern of the *Abbott Laboratories* Court, *see* 387 U.S. at 139–43—is not implicated here, where the statute merely channels review to a different court.

**2.** Plaintiffs emphasize 42 U.S.C. § 6306(b)(4), which merely provides that the remedies available under Section 6306(b) are supplemental and not exclusive. Opp'n 7–9. But as the Department has argued, Mot. 9, preserving *remedies* does not confer a cause of action or grant jurisdiction. Section 6306(b)(4) cannot be read, therefore, to supersede those sections that do so. *See* 42 U.S.C. §§ 6306(b)(1) (vesting review of EPCA final rules in circuit court); 6306(c) (vesting jurisdiction in district court for *other* types of claims). *Abbott Laboratories* says nothing to the contrary; it merely found that the remedy-preserving language of the Food, Drug, and Cosmetic Act "buttressed" (387 U.S. at 144) a conclusion that the Court had already reached—which, as explained in the prior paragraph, was based on reasoning that does not apply here.

**3.** Plaintiffs have no answer to the Department's *expressio unius* argument about 42 U.S.C. § 6306(c), *see* Mot. 7, except to offer the "whole-act canon." Opp'n 11. But that is a circular argument with no elaboration and no supporting authority. Once again, Plaintiffs rely on a *Thunder*

6

*Basin* case in a *TRAC* situation. See Opp'n 11 (citing *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194 (5th Cir. 2021), *aff'd and remanded sub nom. Axon Enter.*, 598 U.S. 175). Unlike the Fifth Circuit in *Cochran*, this Court is considering a statute that vests in circuit court the very claim that Plaintiffs are trying to bring here. Under Fifth Circuit precedent, its jurisdiction in such circumstances is "exclusive." *JTB Tools*, 831 F.3d at 599.

Finally, it is worth noting what Plaintiffs *don't* address: the only court to have answered the question presented here. *See Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 185 (2d Cir. 2004). The Second Circuit held that EPCA vested exclusive jurisdiction in the circuit courts to hear challenges to EPCA rules. The court reached that conclusion for exactly the reasons that the Department advances here, and did so the same "savings clause" argument (Opp'n 6, 8–9) that Plaintiffs raise here. *See Abraham*, 355 F.3d at 193–94.

    **C.**    **Exclusive Review in Circuit Court Bars *Ultra Vires* Claims In This Court.**

As explained in the foregoing sections, the Fifth Circuit has exclusive jurisdiction over challenges to EPCA final rules. If this Court agrees, then it does not matter whether Plaintiffs "invok[e] the APA's cause of action to set aside the two DFRs" or invoke "equitable jurisdiction" to enjoin "*ultra vires* agency actions." Opp'n 2. The exclusivity in circuit court applies to legal and equitable claims alike. *See Fed. Commc'ns Comm'n v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984) (stating that, where exclusive jurisdiction lies in circuit court, plaintiffs "may not evade these provisions by requesting the District Court to enjoin [as *ultra vires*] action that is the outcome of the agency's order"); *cf. Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327–28 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations. Courts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law.") (citations omitted).

7

### D. Plaintiffs Have Not Met the Requirements To Bring a Non-Statutory *Ultra Vires* Claim.

Even if EPCA did not foreclose Plaintiffs' *ultra vires* claim by vesting exclusive review in circuit court, those claims would still fail.

Since the APA's amendment in 1976, an *ultra vires* claim has been described as "essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Texas Gen. Land Off. v. Biden*, 619 F. Supp. 3d 673, 701 (S.D. Tex. 2022) (quoting *Nyunt v. Chairman, Broad. Bd. of Govs.*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.)), *rev'd and remanded on other grounds*, 71 F.4th 264 (5th Cir. 2023).[4] The concept is reserved for "extraordinary situations" and "must not simply involve a dispute over statutory interpretation." *Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1997) (citation omitted). Yet a dispute over statutory interpretation is all that Plaintiffs have raised here: they disagree with the Department over how to read EPCA. *Compare* Compl. ¶¶ 9–20 *with, e.g.*, Energy Conservation Standards for Dishwashers, 89 Fed. Reg. at 31,097–110 (Apr. 24, 2024) (addressing and rebutting, at length and in detail, Plaintiffs' argument about statutory authority). The Department believes that it would prevail at the merits stage, but the point is that Plaintiffs cannot *reach* that stage—in this Court, at least—because they haven't cleared the bar for bringing a non-statutory *ultra vires* claim. *Cf. Kirby Corp.*, 109 F.3d at 269 ("[T]he agency's challenged action [must be] so contrary to the terms of the relevant statute that it necessitates judicial review independent of the review provisions of the relevant statute.").

---

[4] An "*ultra vires* claim" was used historically to get around federal sovereign immunity. *See Geyen v. Marsh*, 775 F.2d 1303, 1307 (5th Cir. 1985). That is, it relied on the "fiction that a federal official acting in violation of the Constitution or beyond his statutory powers was acting for himself only and not as an agent of the government." *Id.* (collecting cases). But the legal landscape changed in 1976, when Congress amended the APA and thus "d[id] away with the *ultra vires* doctrine and other fictions surrounding sovereign immunity." *Apter v. Dep' of Health & Hum. Servs.*, 80 F.4th 579, 593 (5th Cir. 2023) (quoting *Geyen*, 775 F.2d at 1307).

8

An *ultra vires* claim might also be available where the plaintiff "would otherwise be wholly deprived of a meaningful opportunity of vindicating their rights." *Tex. Gen. Land Off.*, 619 F. Supp. 3d at 702 (citing *Bd. of Govs. of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991). But that is not true here, either. Instead, as the Department has emphasized, anyone "adversely affected" by an EPCA final rule may petition for judicial review in the relevant circuit court—as one Plaintiff already has. *See* Mot. 4–6. The Fifth Circuit would be empowered to review that rule under the APA's standards and to grant any relief available under the APA. *See* 42 U.S.C. § 6306(b)(2). That gives Plaintiffs more than a "meaningful opportunity [to] vindicat[e] [their] rights." *Tex. Gen. Land Off.*, 619 F. Supp. 3d at 702.

This Court recently dismissed *ultra vires* claims on those grounds. *See Jackson v. Biden*, No. 2:22-cv-241-Z, 2024 WL 406645, at *6–7 (N.D. Tex. Feb. 2, 2024). Citing a leading D.C. Circuit case, this Court recognized that *ultra vires* claims are only available where (1) "there is no express statutory preclusion of all judicial review"; (2) "there is no alternative procedure for review of the statutory claim"; and (3) "the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Id.* at *6 (quoting *Fed. Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 763 (D.C. Cir. 2022)). The Plaintiffs in *Jackson* could avail themselves of the "alternative procedure for review" provided by the APA—just as Plaintiffs can here, per 42 U.S.C. § 6306(b)(2). Thus, as in *Jackson*, Plaintiffs' *ultra vires* claim should be dismissed.

## II.  PLAINTIFFS LACK STANDING.

Mindful of the 10-page limit in Local Civil Rule 7.2(c), the Department will offer two primary reasons why Plaintiffs' rejoinder on standing (Opp'n 17–25) is unavailing.

First, the Department moved to dismiss under Rule 12(b)(1), not Rule 12(b)(6)—*contra*

9

Opp'n 19—and, accordingly, "[t]he plaintiff bears the burden of proof in establishing that jurisdiction does in fact exist." *Porretto v. Galveston Park Bd. of Trustees*, 113 F.4th 469, 481 (5th Cir. 2024) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). What the Court might "reasonably infer" (Opp'n 21–22) is not the standard.

Second, "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 725 (N.D. Tex. 2020) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011)). Thus, the many novel facts in Plaintiffs' brief (Opp'n 18–25) cannot be considered as allegations supporting standing. Even if the Court found them sufficient, it would still have to dismiss the operative complaint without prejudice to amend—though for the reasons in Section I above, any amendment would be futile.

## CONCLUSION

For the foregoing reasons, and those in Defendant's motion, the Court should dismiss Plaintiffs' complaint.

Dated:  September 23, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

/s/ *Jason C. Lynch*
JASON LYNCH (D.C. Bar No. 1016319)
Trial Attorney
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Telephone: (202) 514-1359
Email: Jason.Lynch@usdoj.gov