UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

Bill Word, David Daquin,
    *Plaintiffs*,

v.

U.S. Department of Energy
    *Defendant*.

Case No. 2:24-cv-00130-Z

**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO AMEND THE COURT'S JUDGMENT**

**I.    Plaintiff's Rule 59(e) Motion Is Proper.**

As the government's brief notes, *Templet v. HydroChem Inc*., 367 F.3d 473, 478 (5th Cir. 2004) underscores that a proper Rule 59(e) motion "calls into question the correctness of a judgment." Opp. Br. 3. That motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Id*. However, the government concedes that the issue at hand was "already briefed and submitted by the Parties," Opp. Br. 1, and that "it is undisputed that Plaintiffs raised Section 6306(b)(4) in their papers." Opp. Br. 4. The government's concessions demonstrate that Rule 59(e)'s requirements for a motion for reconsideration are satisfied.

Plaintiffs are not expressing "mere disagreement" with this Court about the meaning of 42 U.S.C. § 6306(b)(4) or *Abbott Laboratories v. Gardner* (1967). There is nothing in this Court's opinion to disagree with; neither § 6306(b)(4) nor *Abbott Laboratories* were discussed by this Court. The government identifies no such disagreement: that is because it can't.

Instead, the government asserts that "Plaintiffs do not purport to raise a 'manifest error[] of law.'" Opp. Br 3. That is incorrect. Plaintiffs contend that Section 6306(b)(4) creates an exception to the exclusive jurisdiction created in 42 U.S.C. § 6306(b)(1). If Plaintiffs are right

1

about this, then this Court's dismissal of the complaint for lack of jurisdiction would constitute a manifest error of law. The government is perfectly entitled to criticize the merits of Plaintiff's argument, but its insistence that Plaintiff failed to provide such an argument is groundless. The relevant threshold question for Rule 59(e) analysis is whether Plaintiffs alleged a manifest error of law; on this question, the government is wrong. (Section II, below, discusses a different question: whether or not the government's argument on the merits is any good.)

The government's other argument that this Court should deny this motion at the threshold is that the Fifth Circuit Court of Appeals can ultimately consider this issue even if this Court decides against reconsideration. Opp. Br. 4.

Of course it's true that "the Fifth Circuit could rule on 'any ground supported by the record.' *Id*. But what Plaintiffs claim is that "any appeal would likely result in a remand for this Court to focus on matters that it did not previously address." Mot. 2. The reason for this, as explained by the Fifth Circuit, is that:

> "As a court for review of errors," we [the Fifth Circuit] do "not ... decide facts or make legal conclusions in the first instance," but "review the actions of a trial court for claimed errors." *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991). In other words, "a court of appeals sits as a court of review, not of first view." *United States v. Vicencio*, 647 Fed.Appx. 170, 177 (4th Cir. 2016) (quotation marks omitted); *see also United States v. Houston*, 792 F.3d 663, 669 (6th Cir. 2015) ("Like the Supreme Court, we are a court of review, not first view.")

*Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017).

The procedural posture here is similar to that of *Montano*: when "the district court did not reach [Plaintiff's] claim, the normal course would be to remand for the district court to do so." *Id*. That is because the proper locus of decision for the matter at hand is this Court, not the Court of Appeals. For that reason, this Court should issue an initial decision that takes § 6306(b)(4) into account so that the appellate court can appropriately review this court's opinion as necessary..

**II.     The Government's Reasoning Ignores Both Supreme Court Precedent and Legislative History.**

The government dismisses *Abbott Laboratories v. Gardner* as irrelevant, even though that case interprets statutory language that is nearly identical to the provision at issue. Indeed, the government's response brief fails to discuss the relevant portions of *Abbott Laboratories* at issue here. Likewise, the government's response brief fails to discuss Congress's interpretation of that language in H.R. Rep. No. 2139, 75th Cong., 3d Sess. 11 (1938). It is regrettable—although quite understandable—that the government omits discussion of these matters, because attention to them places the government's position in jeopardy.

In the litigation that gave rise to the *Abbott Laboratories v. Gardner* opinion, the government took a position quite similar to the position that it takes now: namely, that the statutory appellate review provision excluded district court jurisdiction. But in the resulting opinion, the Supreme Court rejected the government's position, finding two independent bases for its decision.

*First,* the exclusive judicial review provision in *Abbott Laboratories* (in 21 U.S.C. § 371(e)(1)) only applied to rules in a few specified sections of the title: it didn't apply to the section used by the plaintiffs in *Abbott Laboratories*. (More precisely, the provision only applied to § 343(j), § 344(a), § 346, § 351(b), § 352(d), and § 352(h), and not to the section at issue in *Abbott Laboratories*.) The government argued that "because the statute includes a specific procedure for such review of certain enumerated kinds of regulations, not encompassing those of the kind involved [in *Abbott Laboratories*], other types were necessarily meant to be excluded from any pre-enforcement review." *Abbott Laboratories*, 387 U.S. at 141. The Supreme Court rejected that argument, as the government acknowledges. But the holding in *Abbott Laboratories* doesn't stop there.

3

*Second,* the Supreme Court also provided an alternative and independent basis for its holding that would "foreclose the Government's main argument in this case." *Abbott Laboratories*, 387 U.S. at 144. It was at this point that the Supreme Court interpreted the precise language at issue in this case to provide district court jurisdiction over equitable relief—which is just the same matter at issue here. *See Abbott Laboratories*, 387 U.S. at 145-46. The government's response brief conspicuously ignores this second basis for the Court's opinion. It is this second basis of the *Abbott Laboratories* holding on which Plaintiffs rely.

Furthermore, the government's brief neglects the relevant legislative history—specifically, Congress's interpretation of language that is, textually, almost identical. According to Congress, this statutory text "saved as a method to review a regulation placed in effect by the Secretary whatever rights exist to initiate a historical proceeding in equity to enjoin the enforcement of the regulation, and whatever rights exist to initiate a declaratory judgment proceeding." H.R. Rep. No. 2139, 75th Cong., 3d Sess. 11 (1938). The silence of the government's response brief—about the second basis of the *Abbott Laboratories* holding and the relevant legislative history—is deafening.

Another problem of the government's response brief is that it is incompatible with the application of the interpretive canon of reenactment. *See* Gov. Brief at 9 n.3 (claiming that "Plaintiffs emphasize that EPCA was enacted only eight years after *Abbott Laboratories*. Mot. 6. But the relevant measurement is between 1938 (the context that informed the Court's decision) and 1975, when EPCA was enacted.") That claim is directly contrary to the Supreme Court's holding:

> When Congress used the materially same language . . . it presumptively was aware of the longstanding judicial interpretation of the phrase and intended for it to retain its established meaning. See *Lorillard v. Pons,* 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation

>
> of a statute and to adopt that interpretation when it re-enacts a statute without change"); *Bragdon v. Abbott,* 524 U.S. 624, 645 (1998) ("When administrative and judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its administrative and judicial interpretations as well").

*Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721–22 (2018). The Supreme Court opinion in *Abbott Laboratories* clearly and unmistakably established the meaning of the language at hand when that same language was enacted in the Energy Policy and Conservation Act only eight years later. The reenactment canon presumes that Congress is aware of the meaning the Supreme Court has established and that Congress incorporates that meaning into the statute at issue here.

### III. The Government's Arguments Distinguishing *Volpe* Fail.

A proper interpretation of *Gen. Motors Corp. v. Volpe*, 321 F. Supp. 1112, 1122 (D. Del. 1970), which was affirmed by the Third Circuit, demonstrates that this Court has jurisdiction; regrettably, the government's brief misconstrues the case. In that case, plaintiffs relied upon three bases of statutory jurisdiction: 28 U.S.C § 1337, the Declaratory Judgment Act, and the APA. The court never reached the claims of jurisdiction based on the APA: instead, it relied upon 28 U.S.C. § 1337:

> Although GM seems to argue that the APA is an independent ground for jurisdiction, and the defendants did not disagree on this point (saying rather that it is not applicable to this case); the Court need not decide this question since it has already found in 28 U.S.C. § 1337 a proper jurisdictional basis for this action.

*Gen. Motors Corp. v. Volpe*, 321 F. Supp. 1112, 1122 (D. Del. 1970). 8 U.S.C. § 1337 provides district court jurisdiction over the regulation of commerce and protection against restraints of trade or monopolies.

The government claims that Plaintiffs "disclaim *any* statutory basis for jurisdiction." Opp. Br. 10. This is wrong. In fact, Plaintiffs disclaim any *statutory cause of action*; rather,

5

Plaintiffs rely on a *common-law equitable cause of action*, not a statutory cause of action under law. Plaintiffs certainly have not disclaimed a statutory basis for jurisdiction; in fact, they have expressly relied upon 28 U.S.C. § 1331 as applied to the Energy Policy and Conservation Act as a statutory basis for this Court's jurisdiction. Complaint ¶ 1. Section 1337—as applied to the Vehicle Safety Act of 1966 in *Volpe*—must surely function in the same way that 28 U.S.C. § 1331—as applied to the Energy Policy and Conservation Act—does in this case. 42 U.S.C. § 6306(b)(4) merely preserves this preexisting district court jurisdiction over such equitable remedies.

On the question of remedy, Plaintiffs rely upon the Declaratory Judgment Act, Complaint ¶ 2, just as the plaintiffs in *Volpe* did. Notably, that Act does not by itself create jurisdiction; rather, it gives the Court the power to issue such a remedy. The *Volpe* court discussed the difference between jurisdiction and the applicability of the Declaratory Judgment Act in providing a remedy:

> Therefore, this Court has bare jurisdiction on the basis of [28 U.S.C. §1337 and the Vehicle Safety Act of 1966]. The problem with § 1337 in this context, however, is that standing by itself it confers on the Court no power of remedy. Having jurisdiction, the Court must look to other statutes or judicial powers to indicate the course that should be pursued. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides such a remedy.

*Volpe*, 321 F. Supp. at 1121. In short, the government's arguments for the irrelevance of *Volpe* only demonstrate this Court's jurisdiction.

**IV.     This Court Has Jurisdiction Under 42 U.S.C. § 6306(b)(4).**

The government offers three reasons why 42 U.S.C. § 6306(b)(4) limits jurisdiction in this matter to the court of appeals. Each one of the government's arguments fails.

### A. The Location and Structure of § 6306(b) Demonstrates Its Role as a General Savings Clause.

First, the government contends that § 6306(b) exclusively addresses the courts of appeals. This argument misreads the statute. The title of that subsection, "Petition by persons adversely affected by rules; effect on other laws," demonstrates that even though the petition process is part of what that subsection encompasses, it also includes the broader "effect on other laws."

The phrase "remedies provided for in this subsection" refers to those described in 42 U.S.C. § 6306(b)(2), which provides the court of appeals with jurisdiction "in accordance with chapter 7 of title 5 and to grant appropriate relief as provided in such chapter." Those remedies include holding unlawful and setting aside agency action under 5 U.S.C. § 706 and providing preliminary relief in 5 U.S.C. § 705.

While the remedies specified in § 6306(b)(2) are exclusive to the court of appeals, § 6306(b)(4) explicitly ensures that those remedies "shall be in addition to, and not in substitution for, any other remedies provided by law." In this case, the "other remedies provided by law" are declaratory and injunctive relief. Those remedies are distinct from the APA remedies of § 6306(b)(2).

Section 6306(b)(4) and (5) both address, consistent with the subsection's title, the "effect on other laws." Section 6306(b)(4) preserves existing remedies, making clear that Congress intended to supplement—not replace—the existing agency review process with additional remedies in the court of appeals. This intent is evident in Congress's effort to limit the "effect on other laws," ensuring that existing remedies would not be extinguished.

The government's assertion that it would be "strange" to include the general saving clause in § 6306(b)(4) near the end of § 6306(b) is itself strange: in fact, inclusion

7

of the provision there is perfectly appropriate, and indeed *Abbott Laboratories v. Gardner* has explained why that particular location is perfectly appropriate. As the Supreme Court noted, "it is difficult to think of a more appropriate place to put a general saving clause than where Congress placed it—at the conclusion of the section setting out a special procedure for use in certain specified instances." *Abbott Laboratories*, 387 U.S. at 145. Section 6306(b)(4) is logically positioned at the conclusion of Section 6306(b), alongside another provision that safeguards judicial review from modification by other statutes.

### B. The Text of § 6306(b)(4) Preserves Existing Remedies.

The government's second argument is that the use of "remedies" in § 6306(b)(4) "would be an odd textual choice to preserve *jurisdiction.*" This reasoning is baseless. The use of the term "remedies" in § 6306(b)(4) must be understood as deliberate; it is entirely consistent with Congress's intent to safeguard existing remedies. The Supreme Court described this language as a "general saving clause" for existing remedies. *Abbott Laboratories*, 387 U.S. at 145. "A saving clause is generally used in a repealing act to preserve rights and claims that would otherwise be lost." Saving Clause, Black's Law Dictionary (12th ed. 2024).

Without this clause, existing remedies would have been jeopardized. Section 6306(b)(4) prevents this by ensuring the continued availability of those remedies, including the jurisdiction to issue them. The government's argument that the statute extinguishes jurisdiction over such remedies is contradicted by the express text of the saving clause that preserves them.

### C. The Combination of § 6306(b)(4) And § 6306(c) Is Not Redundant.

The government claims that Plaintiffs' interpretation of § 6306(b)(4) renders § 6306(c) superfluous. This assertion is incorrect.

8

Section 6306(b)(4) preserves "other remedies provided by law," not "remedies provided for in this subsection." § 6306(b)(4). Section 6306(b)(2) ensures that the court of appeals has the authority to issue all remedies under the Administrative Procedure Act. Those remedies must exclusively be brought in a court of appeals, with the exception of the domain of § 6306(c).

Section 6306(c) therefore allows APA remedies to be brought in district court if they encompass the denial of a petition for rulemaking. Such district court jurisdiction would not exist under Plaintiffs' interpretation of § 6306(b)(4), but for § 6306(c). This demonstrates that Plaintiffs' interpretation of § 6306(b)(4) makes § 6306(c) anything but superfluous; rather, § 6306(c) has independent legal effect.

As for suits against states and local governments, it's hard to imagine why § 6306(b)(1) would apply at all, regardless of § 6306(b)(4). To repeat: these are suits against state or local governments, not agencies. There is no "rule prescribed under section 6293, 6294, or 6295 of this title" by any state or local government. There is nothing to petition the circuit court about. As explained by Congress when it enacted this provision, "The provision is necessary because the Act does not require States to petition DOE to show that their building codes comply with Section 327(f)." S. Rep. No.100-6, 1987.

## V.     Conclusion

In sum, the government's arguments against jurisdiction under 42 U.S.C. § 6306(b)(4) are unpersuasive. The statute's plain text, structure, and legislative intent all confirm this Court's jurisdiction over the present matter. For that reason, this Court should grant Plaintiff's motion to amend this Court's judgment.


| | |
|---|---|
| Dated: January 21, 2025 | Respectfully submitted, |
| **MAYFIELD, HEINRICH, RAHLFS, WEABER & PARSONS, LLP** | /s/ *Devin Watkins* |
| JOSEPH M. PARSONS | Devin Watkins |
| TEXAS BAR NO. 24067815 | Dan Greenberg |
| 320 S. POLK, STE 400 | COMPETITIVE ENTERPRISE INSTITUTE |
| AMARILLO, TX 79101 | 1310 L Street NW, 7th Floor |
| (806) 242-0152 | Washington, DC 20005 |
| (806) 242-0159 (FAX) | (202) 331-1010 |
| JPARSONS@MAYFIELD-LAWFIRM.COM | devin.watkins@cei.org |
| | dan.greenberg@cei.org |

## CERTIFICATE OF SERVICE

      I certify that I served the foregoing document through CM/ECF upon Defendant's counsel.

      /s/ *Devin Watkins*
      Devin Watkins
      *Counsel for Plaintiffs*